126 West 42d Street, Inc., Plaintiff, *v.* Adler Footwear, Inc., Defendant.

Supreme Court, Special Term, New York County, May 10, 1949.

*Stephen S. Bernstein* and *Sidney Kant* for plaintiff.

*Arnold Lichtig* and *Herbert A. Mossler* for defendant.

SCHREIBER, J. Plaintiff moves for judgment on the pleadings in this action for a declaratory judgment determining the rent payable by the defendant for the month of July, 1947, and thereafter.

The pertinent facts are these: In May, 1939, the plaintiff's predecessor as landlord made a lease with the defendant for a term beginning May 1, 1939, and ending June 30, 1944. The rent payable thereunder was a minimum rent of $10,000 per annum plus additional rent of 8% of defendant's annual gross sales in excess of $125,000. On May 31, 1944, effective beginning July 1, 1944 (which was the day after the expiration of the first lease), a second lease was made for a term of three years expiring June 30, 1947. The rent payable under this second lease was a minimum of $12,000 per annum plus additional rent in the amount, if any, by which 6% of defendant's annual gross sales exceeded the minimum rent. Since the second lease expired the defendant has continued in the premises without any new lease, by virtue of the provisions of chapter 314 of the Laws of 1945, as amended.

The question involved is the rent to be paid by the defendant while it has remained and remains as a statutory tenant from and after the expiration of the second lease which expired June 30, 1947.

The plaintiff claims that the statutory rental is that prescribed in the first lease which expired June 30, 1944, plus 15% of the minimum rent provided for in such lease as of the freeze date June 1, 1944, the fixed rental on such freeze date being the rental upon which a 15% increase was authorized by the Business Rent Law (L. 1945, ch. 314, as amd.). In other words, the plaintiff here seeks an adjudication that the statutory rent is 15% above the minimum $10,000 per year payable on June 1, 1944, plus 8% of the gross sales over $125,000 per year, the percentage terms in the first lease as they existed on June 1, 1944.

The defendant on the other hand claims that both leases were variable leases and that the determination of the statutory rent

to be paid by it is governed by the variable lease provisions of the Business Rent Law; that the Business Rent Law accords a different treatment to variable leases than it does to fixed rental leases; that under the provisions of the Business Rent Law governing variable leases the second lease made by it, which was in effect in 1945 when the Business Rent Law was enacted, is the controlling lease; that its obligation is to pay only the rent provided for in the second lease, i.e., a minimum of $12,000 per year plus additional rent in the amount, if any, by which 6% of defendant's annual gross sales exceeds such minimum rent (cf. paragraph 13 of the complaint which is admitted in defendant's answer).

When the Commercial Rent Law was enacted on January 24, 1945 (L. 1945, ch. 3), provision was made for a 15% increase in the fixed rent payable, the freeze date for determining such increases being the fixed rent payable on June 1, 1944. In this enactment no provision was made for leases where the rent was variable according to the volume of the tenant's business. Obviously such leases required special treatment.

Accordingly, when the statute was in substance re-enacted, one chapter applying to commercial space (L. 1945, ch. 315) and another to business space (L. 1945, ch. 314, eff. March 28, 1945), a new provision was added (§ 13 in L. 1945, ch. 314) which stated: '' Any lease wherein the specified rent or any part thereof is variable according to volume or other criteria of volume of the tenant's business shall continue without change, but where such lease provides for the payment of a fixed, basic or minimum rent, such fixed amount shall be subject to the provisions of this act.'' The purpose of the insertion of section 13 is described by PECK, P. J., in *Matter of 500 Fifth Ave. (Wise Shoe Co.)* (274 App. Div. 241, 243) as follows: '' The variable lease does not lend itself to the emergency rent formula except in respect to a fixed minimum rent and it was considered fair and equitable that such leases should be continued in accordance with their terms except for the application of the 15% emergency rent increase to the minimum rent figure.''

Clearly both the first and the second leases were variable leases. Clearly, too, the lease which was in effect at the time chapter 314 of the Laws of 1945 was enacted was the second variable lease which section 13 of chapter 314 of the Laws of 1945 said was to continue without change except that the fixed minimum amount was subject to the provisions of the act.

The plaintiff contends that the above-quoted section 13 means only that a variable lease made after the June 1, 1944, freeze date continues without change until its expiration, but that after its expiration the parties here were reverted to the status of all the terms of the lease which existed between them on June 1, 1944. I do not so read the statute. If such had been the intention I believe the statute would have expressly so stated. The statute simply stated that any variable lease was to continue without change except that the fixed or minimum rent was subject to the act. Certainly these words referred to a lease in existence at the time section 13 was enacted on March 28, 1945. They did not refer to a lease in effect on June 1, 1944, which had expired June 30, 1944. As Mr. Justice Shientag said in *City of New York* v. *Interboro Fuel Corp.* (185 Misc. 299, 304): '' The words ' Any lease wherein the specified rent or any part thereof is variable ' are in the present tense and must necessarily refer to a lease in existence at the time the law took effect, January 24, 1945.'' In the instant case, then, the variable lease referred to by the statute was the second lease which was in effect at the time of its enactment. This was the lease which was to continue without change, not the first and expired lease which the plaintiff now claims controls.

Had the Legislature intended that after the expiration of this second lease, to which the statute applied, there was to be a transitional reversion back to the expired lease in effect on June 1, 1944, it should and it would have so stated. Highly significant in this connection is later language in section 13 of chapter 314 of the Laws of 1945, as amended, dealing with graduated rental leases. As to the graduated rental (if the lease is for more than three years in force since on or before June 1, 1944) section 13 states that the accrued rental in the lease is to continue only for the balance of its term; that thereafter and on the expiration of the term there is to be a change in the rent, based upon certain specified methods of determining the rental value from and after expiration. There is no such provision in respect of a variable lease which is stated to '' continue without change ''. The failure to make provision for a change in rental in a variable lease after its expiration, although there is a specific provision for such change after expiration in respect of graduated leases covered in the same section, cannot be assumed to be an oversight particularly where, by a 1948 amendment (L. 1948, ch. 677), the words '' Any lease wherein the specified rent or any part thereof is variable according to volume  *  *  *  shall continue with-

out change," were amended to read: "Any lease *existing or future* wherein the specified rent or any part thereof is variable according to volume   *   *   *   shall continue without change". (Italics supplied.)

In *Matter of 500 Fifth Ave. (Wise Shoe Co.) (supra)*, the court continued after its expiration a variable lease made August 31, 1942, and expiring August 31, 1947, permitting the landlord, however, to make an additional 15% increase over the minimum rental provided on the freeze date. PECK, P. J., referred to the statute as authority for continuing the variable lease after its expiration (subject only to the 15% increase in the minimum) stating that the statute intended that after expiration (p. 243) "The variable lease was substantially preserved and the graduated lease was abrogated." In the instant case the variable lease to be preserved is the second lease, the lease in effect at the time the 1945 statute was enacted.

I agree with the tenant's contention. I believe that it was not the legislative intent, where a variable lease was made after the freeze date and such variable lease was in existence when chapter 314 of the Laws of 1945 was enacted, to abrogate such variable lease at its expiration date and thereafter to revert the parties to a variable lease which had expired prior to its enactment. The Legislature said that variable leases were to continue during the emergency without change because, as the courts have interpreted the legislative intent, variable leases do not lend themselves reasonably or readily to the emergency rent formula. In the instant case it will not avail the landlord, assuming for the sake of argument that he could do so here, to claim a 15% increase in the fixed minimum because the only provision in the act dealing with fixed rentals refers to fixed rentals as of June 1, 1944, and in this case 15% above the fixed rental on that date is $500 per year less than the fixed rental in the variable lease in force when the statute was enacted. The defendant tenant is willing to stand on the second lease in its entirety. On the equities it is to be noted that this second lease was actually signed (although not effective until one month later) on May 31, 1944. June 1, 1944, was the date which the Legislature chose as the date best calculated to determine what a landlord and a tenant considered a fair rental, when neither side was under pressure and they could deal reasonably and at arm's length with each other.

Settle order in accordance with this decision.