CRAWFORD CLOTHES, INC., et al., Plaintiffs, *v.* KAUFMAN-8TH AVE. CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, July 24, 1951.

*Hyman Fried* and *Abbie Goldstein* for plaintiffs.

*Abraham K. Kaufman* and *Irving Brown* for defendant.

HOFSTADTER, J. The plaintiffs, the tenants under a written lease of a store in a building in this city owned by the defendant, their landlord, have brought this action to recover rent payments claimed to have been in excess of the amount payable under the applicable lease. A brief history of the relation of the parties is necessary to an understanding of the problem posed for decision.

On August 12, 1943, the parties entered into the first lease for a term of five years, commencing on October 1, 1943, and ending on September 30, 1948. Under this lease the tenant was to pay a fixed minimum annual rent of $10,000 for the period from October 1, 1943, to September 30, 1945, and of $15,000 from October 1, 1945, to September 30, 1948, when the term

ended. This lease provided further that if in any year 5% of the tenant's gross sales exceeded the fixed minimum for that year, the tenant was also to pay this excess as additional rent. Under this lease the plaintiffs paid the fixed minimum rent of $10,000 a year for the first two years and of $15,000 for the last three years of the term.

On March 28, 1945, the Business Rent Law (L. 1945, ch. 314, as amd.) which applies to the premises here involved, took effect. Under this law the rent freeze date is June 1, 1944. On June 15, 1948, the defendant pursuant to subdivision (e) of section 8 of the Rent Law as amended tendered to the plaintiffs for execution a renewal lease for the further term of two years to commence on October 1, 1948, at the expiration of the current lease, and to end on September 30, 1950. The terms and conditions of the proposed renewal lease were substantially similar to those of the prior lease, except for the stipulated rental. The plaintiffs under date of July 6, 1948, executed the renewal lease so tendered to them.

This renewal lease, the one from which the plaintiffs' claim in this action springs, bound the tenant to pay "(a) a fixed annual rental equal to the emergency rent as defined by Chapter 314 of the Laws of 1945 of the State of New York, as amended, commonly known as the Business Rent Law ". In addition to this fixed rent, referred to as " minimum rent," the plaintiffs by this renewal covenanted, as they had in the earlier lease, to pay the amount by which 5% of the gross sales each year exceeded the minimum rent. Attention is at once arrested by the manner in which the minimum rental is prescribed in the renewal lease. Instead of stating a fixed sum the parties adopted the emergency rent, as defined in the Rent Law, whatever that might be.

On April 10, 1945, the defendant pursuant to section 3 of the Business Rent Law gave the plaintiffs written notice that the emergency rent was $11,500, at the same time quoting the provision of the law that acceptance of the emergency rent was not to be construed as a waiver of the right to seek increased rent. In point of fact, the plaintiffs at no time paid as minimum rent the amount stated in this notice as the emergency rent. Until September 30, 1945, they paid minimum rent at the rate of $10,000, and from October 1, 1945, to September 30, 1948, they paid at the rate of $15,000 a year, in accordance with the first lease.

On the commencement of the renewal term the defendant billed the plaintiffs for the October, 1948, rent at $1,437.50, which is at the rate of $17,250 a year, or 115% of the $15,000 minimum rent which the tenant had been paying for the last three years of the expired lease. This October, 1948, rent bill and the succeeding monthly bills for the first year of the renewal term bore the further statement that the amount billed was on account only of the true rent and without prejudice to the landlord's right to have the emergency rent fixed by the Supreme Court. This statement, however, did not appear on the monthly rent bills during the second year of the renewal term. The tenant paid promptly and unconditionally each of these rent bills at the rate of $17,250 a year from October 1, 1948, to September 30, 1950, and the plaintiffs concede that at no time during this renewal period did they assert that the rent so being paid was more than the proper rent due.

The formula for the minimum rent under the renewal lease of July 6, 1948, was, of course, pregnant with controversy and the renewal term had barely begun when the inevitable storm broke. The threat implicit in the reservation on the October rent bill became an actuality on October 2, 1948, when the defendant as petitioner instituted a proceeding in this court to have the emergency rent fixed. In its petition it alleged that the initial lease of August 12, 1943, was "primarily and fundamentally a graduated lease" and that the emergency rent was the reasonable rent to be fixed by the Supreme Court on the basis of the rent for comparable business space. The plaintiffs, as respondents in this rent-fixing proceeding, countered with a cross motion to dismiss the petition for insufficiency in law.

The motion and cross motion were submitted in November, 1948, and on December 20, 1948, a final order in the proceeding was made, dismissing the petition on the merits and granting the cross motion to dismiss for insufficiency. Mr. Justice Eder who made this order rendered an opinion in which he rejected the contention of the petitioner (defendant here) that the original lease was a graduated lease, and held it to be a variable lease. In the course of his opinion Mr. Justice Eder, upholding the position taken by the respondents (the present plaintiffs) in their brief said: "It also appears from the petition that, as provided by the latter lease, the respondents are presently paying a rental equivalent to 15 per cent. over the rental previously paid. We thus have a situation where the petitioner is seeking an order fixing the emergency rent of premises

occupied by the respondents under and pursuant to the terms of a lease which expires on September 30, 1950, and under which they are already paying the emergency rent required to be paid pursuant to the lease, and pursuant to the statute had there been no lease. In this situation it seems difficult to understand this application to fix the emergency rent." (*Matter of Kaufman-Eight Ave. Corp. [Crawford Clothes]*, N. Y. L. J., Dec. 15, 1948, p. 1540, col. 5.)

When Mr. Justice EDER said that the plaintiffs were " already paying the emergency rent required to be paid pursuant to the lease " he was referring to their monthly payments, without protest, at the rate of $17,250 a year. The plaintiffs, having thus successfully maintained their position that $17,250 was the correct emergency rent and, therefore, the minimum rent payable under the renewal lease, were entirely satisfied with the result they had achieved and on the strength of it freely continued to pay the minimum rent of $17,250 a year. The petitioner (defendant here), however, appealed from the final order, though it has never pressed the appeal.

On August 23, 1950, the parties entered into a third lease from October 1, 1950, to September 30, 1952, in which they again adopted the emergency rent as the minimum rent and prescribed the same additional percentage rent which had prevailed in the two prior leases. Under this third lease the plaintiffs have also been paying as minimum rent $17,250 a year.

It was testified for the defendant that had the plaintiffs asserted a claim of overpayment during the period of the second lease the defendant would not have entered into this third lease. I find this testimony to accord with the facts.

Early in October, 1950, the defendant as petitioner instituted a proceeding in this court to have the emergency rent fixed. In this proceeding, though now admitting the lease to be variable, it invoked a 1950 amendment (L. 1950, ch. 326) to section 13 of the emergency law, as basis for its renewed claim that the emergency rent was the reasonable rent to be fixed by the Supreme Court on the basis of comparability. The petition was resisted by two cross motions, one to dismiss for insufficiency, the other to dismiss on the grounds of estoppel and *res judicata*, by reason of the final order in the 1948 proceeding. On reargument a final order was made granting the cross motion to dismiss the petition for insufficiency and dismissing the proceeding, but denying the cross motion founded on estoppel and *res judicata*. An appeal taken by the defendant from the final order in the 1950 proceeding is still pending.

The foregoing recital discloses, if nothing else, a persistent campaign on the defendant's part to obtain a higher minimum rent than the $17,250 a year which the plaintiffs have been paying since October 1, 1948, and determined and successful opposition to these efforts by the plaintiffs. It must be recognized, too, that neither side has adhered consistently to its position, but each has shifted it as the needs of the moment seemed to require. Not alone did the plaintiffs voluntarily pay the minimum of $17,250 right along, but they defeated the 1948 proceeding through their contention that this $17,250 was the true emergency rent payable under the first renewal lease. In the present action the plaintiffs have, however, completely changed front. They now say that the correct emergency rent was 115% of the rent on the freeze date, or $11,500 a year, as stated in the defendant's notice of April 10, 1945, and that the minimum rent payable under the first renewal was $11,500, rather than the $17,250 which they paid. Accordingly they sue for the asserted overpayments during the 1948–1950 renewal period, computed on the basis of such minimum of $11,500. They rest their claim both on the notice of April 10, 1945, and on the emergency rent law and the decisions under it.

The notice of April 10, 1945, was sent merely in formal compliance with what was believed to be the command of the rent law. The course of dealings between these parties, however, shows that neither attached any significance to the notice or took any action in reliance on it. In the circumstances, the notice loses whatever weight it might otherwise carry and I think the present issue must be determined without regard to the notice.

The plaintiffs then rely on the text of section 13 of the rent law by which a fixed, basic or minimum rent in a variable lease is made subject to the provisions of the law. The plaintiffs argue that subdivision (c) of section 2 establishes the emergency rent as 115% of the rent payable on June 1, 1944, the freeze date. It is unnecessary to review the decisions on variable leases cited by the parties in support of their respective positions, for I do not think they are controlling here. In some the fixed rent under the lease remained constant throughout the term, so that the question which faced these parties operating under an initial lease having a fixed rent of $10,000 for a portion and of $15,000 for the remainder of the term could not arise. (*Edythe Nelson, Inc.* v. *500 Fifth Ave.*, 73 N. Y. S. 2d 299.) In others there was no dispute between the landlord

and the tenant regarding the minimum rent, but the controversy related solely to the percentage rent (*500 Fifth Ave.* v. *Dalsheim,* 300 N. Y. 587, affg. 275 App. Div. 821; *126 West 42nd St.* v. *Adler Footwear,* 195 Misc. 1).

While in *Matter of 500 Fifth Ave.* (*Wise Shoe Co.*) (274 App. Div. 241, affd. 300 N. Y. 491) the landlord was allowed 115% of the minimum rent in effect on the expiration of the lease, rather than 115% of the lower minimum in effect on the freeze date, the tenant there does not appear to have contested this issue and there is no discussion of it in the court's opinion. The actual decision was that on the expiration of a variable lease the landlord was not entitled to have the court fix a reasonable rent. It is doubtful whether the case should, as urged by the defendant, be regarded as binding authority for fixing the emergency rent at 115% of the minimum payable at the end of the term of a variable lease. What is, however, of prime importance is that the Appellate Division decision in the *Wise Shoe Co.* case was handed down on June 30, 1948, a few days before the execution of the renewal lease of July 6, 1948. Whether the plaintiffs knew of the decision when they signed the renewal or not, they certainly knew of it when they paid rent during the renewal term at the rate of $17,250 a year. The *Wise Shoe Co.* case is cited in Mr. Justice EDER's opinion in the 1948 proceeding.

When the plaintiffs received their first rent bill at the rate of $17,250 and the next day were served with the petition to have the emergency rent fixed on the basis of comparability they presumably had before them both the April 10, 1945, notice of emergency rent and the *Wise Shoe Co.* decision in which the court, at least, gave effect to the tenant's acknowledgment of the landlord's right on the expiration of a variable lease to receive 115% of the last minimum rent. The plaintiffs were then free to choose their course. They were under no compulsion to acquiesce in the defendant's demand for rent at the rate of $17,250. They were in possession under a two-year lease which bound them to pay not a stated sum but the emergency rent. If they felt $11,500 or any sum other than $17,250 was the true emergency rent, they could have obtained a judicial determination of the question. Instead, they paid the $17,250 and in the 1948 proceeding insisted that this was the correct emergency rent.

The true emergency rent under a variable lease was by no means free from doubt when the plaintiffs decided to pay the

$17,250 rather than fight for a lower sum. In the existing uncertainty the plaintiffs were in as good a position as the defendant to predict how the vexed question would finally be resolved. Though it may be assumed for the purpose of the present discussion that the plaintiffs are correct in their statement that the emergency rent was $11,500, this assumption is not borne out by any clear cut decision of which the court is aware. Indeed, very recently in *Cortlandt Cafeteria* v. *Cortlandt & Dey Streets Corp.* (302 N. Y. 409, 412) the Court of Appeals said, " the fixed or minimum rent is to be increased by 15%. (See *Matter of 500 Fifth Ave., Inc.* [*Wise Shoe Co.*], 300 N. Y. 491, affg. 274 App. Div. 241; *500 Fifth Ave., Inc.* v. *Dalsheim,* 300 N. Y. 587.)" Which minimum?

For whatever reason, the plaintiffs preferred to pay, rather than litigate. The payments now sought to be recouped were not induced by the defendant nor is it shown that they were made under a mistake either of fact or law. In shaping their course, the plaintiffs acted voluntarily with full knowledge of the relevant factors. An action such as this for money had and received is grounded on equitable principles. No equity requires the restoration to the plaintiffs at this late date of moneys which they were free at the time to pay or withhold as their interest or judgment dictated. This conclusion is fortified by the fact that the defendant entered into the third lease in 1950 in reliance on the plaintiffs' failure theretofore to make a claim of overpayment of rent.

Having found that the payments were voluntary and not recoverable, I need not consider the defenses of the Statute of Limitations, *res judicata* and estoppel, except to the extent already stated.

Pursuant to leave granted on the trial the parties have in appendices to their briefs made various motions. The plaintiffs' motions 8 and 9 to strike out evidence are granted with appropriate exception to the defendant; the plaintiffs' motions 1 to 7, and 10 to 22, both inclusive, to strike out evidence are denied, with appropriate exception in each instance to the plaintiffs. The determination of the main issue renders unnecessary disposition seriatim of each of the plaintiffs' motions addressed to the defenses. If the plaintiffs consider themselves aggrieved by the failure to pass separately on their motions, they may have an exception in each instance.

The defendant's motion to amend its answer to plead as an additional estoppel that had the plaintiffs claimed the rent paid

under the first lease was in excess of the emergency rent, the defendant would not have entered into the second lease is denied with an exception to the defendant.

The foregoing constitutes the decision in the case. Judgment is directed for the defendant dismissing the complaint, with costs. Settle judgment.